UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KONG MENG VUE,

Petitioner,

v.

WARDEN OF THE GOLDEN STATE
ANNEX DETENTION FACILITY, *et al.*,

Respondents.

Case No.  1:25-cv-1713-JDP

ORDER

Petitioner Kong Meng Vue was admitted to the United States as a lawful refugee, and, after serving a prison sentence for an aggravated felony, he was ordered removed in 2004. Petitioner, however, was not removed at that time and, instead, remained on supervised release for more than twenty years until he was re-detained in 2025.  He petitions for a writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release on the basis that ICE failed to comply with its own regulations in re-detaining him.  Respondents move to dismiss the petition.  For the reasons outlined below, respondents' motion is denied, the petition is granted, and the court orders respondents to immediately release petitioner.[1]

---

[1] Petitioner has been detained since November 4, 2025, and he filed his petition December 2, 2025.  ECF No. 1.  The case is fully briefed.  Although petitioner did not initially seek a temporary restraining order ("TRO"), his opposition, filed February 4, 2026, contained a motion for a TRO.  ECF No. 15.  Because petitioner fails to explain his delay in seeking emergency relief, his motion is denied as untimely. *See* Local Rule 231(b).  Nonetheless, the court addresses the merits of the petition.

1

**Background**

On or about September 16, 1988, petitioner was admitted to the United States as a lawful refugee, after coming from Laos.  ECF No. 14-1 at 2.  On October 17, 1989, petitioner became a Lawful Permanent Resident.  *Id*.  In December 2003, petitioner was convicted of vehicular theft under California Vehicle Code § 10851(a); he was sentenced to sixteen months in prison.  *Id*.  On May 30, 2004, after serving his prison sentence, petitioner was taken into custody and issued a Notice to Appear that charged him with removability under 8 U.S.C. § 1227(a)(2)(A)(iii).  *Id*. at 3.  On June 7, 2004, an immigration judge ordered petitioner removed from the United States to Laos or, in the alternative, Thailand; petitioner waived his right to appeal.  *Id*.  On or about September 6, 2004, ICE released petitioner from custody and placed him on an order of supervision pending removal.  *Id*.

More than twenty years later, on November 4, 2025, ICE revoked petitioner's order of supervision because it determined that petitioner "can be expeditiously removed from the United States pursuant to the outstanding order of removal."  *Id*. at 3, 24.  On December 3, 2025, an immigration judge denied petitioner's motion to reopen his immigration case, finding that such motion was untimely because it has been over twenty years since the removal order was issued; petitioner's appeal of that order was rejected.  *Id*. at 3, 37, 40.

**Procedural History**

On December 2, 2025, petitioner, initially proceeding pro se, filed a petition for habeas corpus, ECF No. 1, and a motion to appoint counsel, ECF No. 2.  The court granted petitioner's request and appointed counsel on January 5, 2026.  ECF No. 10.  All parties consented to magistrate judge jurisdiction, and the matter was reassigned to the undersigned on January 6, 2026.  ECF No. 11.  On January 21, 2026, respondents filed a motion to dismiss the petition.[2]  ECF No. 14.  On February 4, 2026, in opposition to respondents' motion, petitioner moved for a

---

[2] Respondents also moved "to strike and dismiss all unlawfully named officials."  ECF No. 14 at 1 n.1.  Petitioner properly named his immediate custodian, the Warden of the Golden State Annex Detention Facility.  *See* ECF No. 1 at 1; *Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024).  Because judgment will be entered and the case will be closed, the court finds it unnecessary to determine whether the other respondents were properly named.

temporary restraining order.  ECF No. 15.  Thereafter, respondents filed an opposition to petitioner's motion, and petitioner filed a reply.[3]  ECF Nos. 18 & 20.

### Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law.  *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### Analysis

Petitioner argues that his detention is unlawful because ICE failed to follow its own regulations in re-detaining him.[4]  ECF No. 1 at 17-18.  Respondents counter that "ICE followed its regulations" and that the petition should be dismissed because petitioner "has been detained for less than the six-month detention period approved by the Supreme Court as presumptively reasonable."  ECF No. 14 at 4, 6.

Respondents argue that petitioner is detained pursuant to 8 U.S.C. § 1231(a)(6), which authorizes detention of a noncitizen "beyond the removal period" of ninety days set forth in § 1231(a)(1).  *See* ECF No. 14 at 1; 8 U.S.C. § 1231(a).  In other words, where a noncitizen has

---

[3] Petitioner filed his reply two days after the deadline set by the court.  *See* ECF Nos. 17 & 20.  Concurrent with the reply, petitioner moved for an extension of time on the grounds that petitioner's counsel "was engaged in an ongoing felony jury trial" that "required full-time attention and prevented timely filing of the reply brief."  ECF No. 19.  Finding good cause for the delay, the court grants petitioner's motion, ECF No. 19.

[4] Petitioner also brings claims alleging that ICE violated his Fifth Amendment Due Process rights and his Eighth Amendment right to be free from cruel and unusual punishment.  ECF No. 1 at 13-16.  Because relief is appropriate on the above-referenced claim, the court finds it unnecessary to reach petitioner's other claims.

been ordered removed but removal is not effectuated within ninety days, § 1231(a)(6) allows the government to continue detention rather than release the noncitizen under supervision. Respondents argue that the court should apply *Zadvydas*, where the Supreme Court held that discretionary detention under § 1231(a)(6) is presumptively reasonable for up to six months, at which point the noncitizen would have to show that "there is no significant likelihood of removal in the reasonably foreseeable future" and the government would have to provide evidence rebutting such a showing. 533 U.S. at 701. Respondents argue that, because petitioner has been detained for fewer than six months, "[t]he reasonableness of his detention is presumed, and thus his petition should be dismissed." ECF No. 14 at 4.

Respondents' reliance on § 1231(a)(6) and *Zadvydas* is misplaced. In *Zadvydas*, the petitioners were continuously detained under § 1231(a)(6) after the expiration of the removal period. 533 U.S. at 684-85. Here, on the contrary, petitioner was released under supervision after being re-detained—notably, that release extended more than twenty years. ECF No. 14-1 at 3. Other courts that have addressed such situations of re-detention and have held that "the burden-shifting framework from *Zadvydas* does not apply" because a petitioner's re-detention is not properly considered under § 1231(a)(6). *See, e.g.*, *Yan-Ling X. v. Lyons*, No. 1:25-cv-01412-KES-CDB (HC), 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025) (collecting cases). Instead, courts have determined that a petitioner's re-detention should be analyzed under ICE's own regulations. *Id*. The court agrees with other courts to have considered the issue presented here, and, instead of considering petitioner's detention under § 1231(a)(6), considers whether ICE complied with its own regulations in re-detaining petitioner.

Where, as here, the government does not detain a noncitizen past the 90-day removal period, the noncitizen is released under supervision pending removal. This supervised release is governed by § 1231(a)(3), which requires a noncitizen, *inter alia*, "to appear before an immigration officer periodically for identification" and "to obey reasonable written restrictions on [their] conduct or activities." 8 U.S.C. § 1231(a)(3). The revocation of a petitioner's supervised release, in turn, is governed by 8 C.F.R. § 241.13(i), which allows for "revocation for removal" if it is determined that, "on account of changed circumstances, . . . there is a significant likelihood

that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). The regulations "indicate that, when ICE revokes release to effectuate removal, it is ICE's burden to show a significant likelihood that the [noncitizen] may be removed." *Yan-Ling X.*, 2025 WL 3123793, at *4 (cleaned up) (collecting cases).

"The plain language of § 241.13(i)(2), does not allow a court, in the first instance, to make an individualized finding that a changed circumstances has occurred." *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025). "Instead, to the extent ICE claims that it made such a determination, the court should review that claim in light of the factors set out in 8 C.F.R. § 241.13(f), instructing ICE on how it should make such a determination." *Id*. (internal quotation marks and citation omitted). Such factors include:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country . . . in question.

8 C.F.R. § 24.13(f).

Respondents acknowledge that, before re-detaining petitioner, ICE first had to determine that, "on account of changed circumstances," there was "a significant likelihood that [petitioner] may be removed in the reasonably foreseeable future." ECF No. 14 at 6. While respondents argue that "[a]n ICE official made this determination," *see id*., they do not provide any information regarding petitioner's efforts to comply with the order of removal, ICE's efforts to remove noncitizens to Laos, or the views of the Department of the State regarding the prospect of removal of noncitizens to Laos, *see* 8 C.F.R. § 24.13(f). Instead, respondents offer a single sentence from a declaration: "On November 07, 2025, ERO [Enforcement and Removal Operations] initiated the process of obtaining travel documents from Laos." ECF No. 14-1 at 3. In their motion, respondents restate this evidence by representing that "ICE is in the process of providing all of the necessary information and documentation to the Laotian Consulate so that Laos can issue travel documents and Petitioner's removal can be scheduled." ECF No. 14 at 4.

Notably, respondents do not provide any specific information to show that, based on the

initiation of a travel document request, there is now a significant likelihood that petitioner will be removed in the reasonably foreseeable future.  Indeed, the government initiated this process back on June 21, 2004, and there is no explanation of what has transpired in the ensuing twenty-one years.  ECF No. 14-1 at 3.  Respondents fail to explain "why a travel document could not be obtained in the past," much less "why obtaining a travel document is more likely this time around."  *See Hoac*, 2025 WL 1993771, at *4.  Accordingly, respondents do not show that the initiation of the travel document process alone constitutes a changed circumstance such that there is now a significant likelihood that petitioner will be removed in the reasonably foreseeable future.[5]  *See Yan-Ling X.*, 2025 WL 3123793, at *4 (finding that ICE violated its regulations where "[t]he only changed circumstance that respondents identify is that petitioner's case is 'under current review by the Government of China for the issuance of a travel document'"); *Duong v. Warden, Golden State Annex Det. Facility*, No. 1:25-cv-1771-DAD-CSK, 2026 WL 177767, at *6 (E.D. Cal. Jan. 22, 2026), *report and recommendation adopted* by *Duong v. Warden of Golden State Annex Det. Facility*, No. 1:25-cv-1771-DAD-CSK, 2026 WL 330628 (E.D. Cal. Feb. 6, 2026) (finding that ICE violated its regulations where "[t]he only changed circumstance that respondents identify in petitioner's case is that ICE is in the process of providing all of the necessary information and documentation to the Vietnamese Consulate so that Vietnam can issue travel documents"); *Chen v. Chestnut*, No. 1:25-cv-1338-EPG, 2025 WL 3496444, at *5 (E.D. Cal. Dec. 5, 2025) (finding that ICE violated its regulations where "[t]he only evidence provided" was the fact that "ERO is actively working on obtaining . . . travel documents for Petitioners and has initiated the process to expeditiously remove them from the United States").

Respondents fail to meet their burden of showing that ICE complied with the requirements set forth in § 241.13(i).  *See Yan-Ling X.*, 2025 WL 3123793, at *4.  ICE, like all government agencies, is required to follow its own regulations.  *See United States ex rel Accardi v.*

---

[5] Even if the initiation of the travel document process supported a finding that ICE complied with its regulations, ERO did not initiate such process until three days *after* petitioner was re-detained on November 4, 2025, and thus ICE still would have failed to satisfy its regulations at the time it re-detained petitioner.  ECF No. 14-1 at 3.

*Shaughnessy*, 347 U.S. 260, 268 (1954); *see also United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010) ("It is a well-known maxim that agencies must comply with their own regulations."). Because the court finds that ICE re-detained petitioner in violation of its regulations, petitioner is entitled to habeas relief. *See Asfestani v. Current or Acting Field Off.*, No. 1:25-cv-1562-SCR, 2025 WL 3677321, at *6 (E.D. Cal. Dec. 18, 2025) ("In keeping with the principle, numerous courts have granted habeas relief for ICE's failure to comply with post-order detention regulations.") (collecting cases).

Accordingly, it is hereby ORDERED that:

1. The petition for writ of habeas corpus, ECF No. 1, is GRANTED.

2. Respondents' motion to dismiss, ECF No. 14, is DENIED.

3. Petitioner's motion for a temporary restraining order, ECF No. 15, is DENIED.

4. Petitioner's motion for an extension of time to file reply, ECF No. 19, is GRANTED.

5. Respondents are ordered to immediately release petitioner from their custody under conditions no stricter than those to which he was subject to prior to his November 4, 2025 detention.

6. Respondents are enjoined and restrained from re-detaining petitioner unless they first comply with all applicable requirements set forth in 8 C.F.R. § 241.13(i).

7. The Clerk of the Court is ordered to enter judgment accordingly and close this case.

IT IS SO ORDERED.

Dated:     February 20, 2026     _____

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

7